## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DOTTIE CRANE,

       Plaintiff,

v.                            Case No:  2:15-cv-678-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

---

## ORDER

Plaintiff Dottie Crane seeks judicial review of the denial of her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the briefs, and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises three issues on appeal: (1) whether substantial evidence supports the Administrative Law Judge's (ALJ) assessment of Plaintiff's Residual Functional Capacity ("RFC"); (2) whether the ALJ properly did not consider Plaintiff's obesity; and (3) whether the ALJ properly evaluated Plaintiff's tobacco use.

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (holding that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## II.    Procedural History and Summary of the ALJ's Decision

On August 3, 2011, Plaintiff filed applications for a period of DIB and SSI alleging that she became disabled and unable to work on March 5, 2007.   Tr. 65, 163-79.   Plaintiff alleged disability due to osteoarthritis, chronic asthma, hepatitis C, bursitis, and growth between sciatic nerve and spine.   Tr. 65.   The applications initially were denied on October 5, 2011 and upon reconsideration on November 30, 2011.   Tr. 104, 123.   Plaintiff requested and received a hearing before ALJ M. Dwight Evans on March 14, 2014, during which she was represented by an attorney. Tr. 27-64.   Plaintiff and a vocational expert ("VE"), Jeff Barrett, testified at the hearing.   *Id.*

On July 21, 2014, the ALJ issued a decision finding Plaintiff not disabled from March 5, 2007 through the date of the decision.   Tr. 11-21.   At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 5, 2007.   Tr. 13.   At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease and asthma.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 15.   The ALJ then determined that Plaintiff had the RFC to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).[2]   *Id.*   Further, the ALJ found

---

[2] The regulations define medium work as work that involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [it is determined] that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c), 416.967(c).

> [Plaintiff] can frequently lift and/or carry up to 25 pounds and
> occasionally life and/or up to 50 pounds.  In a total 8-hour workday,
> [Plaintiff] can sit for 6 hours, stand for 6 hours and walk for 6 hours.
> [Plaintiff] is unlimited in the use of [her] hands for pushing and pulling,
> including the operation of hand and/or foot controls other than as shown
> for life and/or carry.   [Plaintiff] can frequently climb ladders, ropes and
> scaffold, stoop and crouch and is unlimited in her ability to balance,
> kneel and crawl.   [Plaintiff] can occasionally be exposed to atmospheric
> conditions such as fumes, odors, dust, gases and pollutant irritants but
> must always be in a thermostat controlled environment.

*Id.*  Next, the ALJ found that Plaintiff is capable of performing past relevant work as a laborer.   Tr. 20.   Considering Plaintiff's age, education, work experience, and RFC for the full range of medium work, the ALJ concluded that Plaintiff can adjust successfully to other work that exists in significant numbers in the national economy. Tr. 21.   As a result, the ALJ found that Plaintiff is not disabled.   *Id.*

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on October 5, 2015.   Tr. 1-4.   Accordingly, the July 21, 2014 decision is the final decision of the Commissioner.   Plaintiff filed an appeal in this Court on October 30, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 15, 17.

## III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step

sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §416.920.

The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Atha*, 616 F. App'x at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence

is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r,* 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV. Discussion

### a. Whether substantial evidence supports the ALJ's assessment of Plaintiff's RFC

On November 28, 2011, a state agency physician, Violet Acero Stone, M.D.,

examined Plaintiff and assessed Plaintiff's RFC.   Tr. 87-89.   Dr. Stone opined that Plaintiff has four medically determinable impairments: disorders of back-discogenic and degenerative, asthma, hepatitis, and other and unspecified arthropathies.   Tr. 86.   Dr. Stone also considered Listings 1.04 for spine disorders and 3.03 for asthma. *Id.*   Dr. Stone concluded that Plaintiff has exertional limitations of lifting and/or carrying occasionally twenty pounds and frequently ten pounds, standing and/or walking for a total of six hours in an eight-hour workday, sitting for a total of six hours in an eight-hour workday, and pushing and/or pulling unlimitedly.   Tr. 87. Dr. Stone also noted that Plaintiff has postural limitations of frequently climbing ladders/ropes/scaffolds, stooping, and couching.   Tr. 88.   Dr. Stone concluded that Plaintiff is not disabled.   Tr. 90.

In assessing Plaintiff's RFC, although the ALJ considered Dr. Stone's opinion, he assigned only some weight to Dr. Stone's opinion because "Dr. Stone found [Plaintiff's] Hepatitis C a severe impairment, and new evidence from [Plaintiff's] treating source warrants a less restrictive RFC due to [Plaintiff's] good physical examinations and in light of her extensive activities of daily living."   Tr. 19.

Plaintiff argues that her medical records do not support the ALJ's assessment of Plaintiff's RFC.   Doc. 25 at 11.   Specifically, Plaintiff asserts that the ALJ's findings are inconsistent with Dr. Stone's opinion.[3]   *Id.* at 11, 15.   Plaintiff argues that although Dr. Stone opined that Plaintiff is capable of doing light work,[4] the ALJ

---

[3] Plaintiff contradicts her own argument by arguing in her reply that "it was error for the ALJ to rely on Dr. Stone's remote 2011 opinion."   Doc. 31 at 3.

[4] The regulations define "light work" as follows:

determined that Plaintiff can perform the full range of medium work.  *Id.* at 12.

Plaintiff first claims that her medical records dated after Dr. Stone's examination show Plaintiff's worsening conditions as her pain radiated into right and left legs, neck, shoulders, and arms.  *Id.* at 12; Doc. 31 at 2.  Plaintiff's respiratory problems including breathing difficulties and coughing also continued, for which Plaintiff received regular treatment.  Doc. 25 at 13.  Plaintiff also argues that since Dr. Stone examined her, she has incurred additional impairments such as insomnia, headaches, and left shoulder pain.  *Id.* at 13.

Furthermore, Plaintiff asserts that the ALJ did not specify what daily activities he relied upon in assigning only some weight to Dr. Stone's opinion.  *Id.* at 14.  Plaintiff argues that the ALJ's reliance on Plaintiff's "extensive activities of daily living" does not provide a sufficient explanation for appellate review.  *Id.* at 15.  As a result, Plaintiff claims that substantial evidence does not support the ALJ's RFC finding.  *Id.*

The Commissioner responds that the ALJ properly considered and assessed the relevant evidence.  Doc. 28 at 4, 6.  The Commissioner argues that the relevant

---

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

medical records do not support Plaintiff's limited ability to perform only light work. *Id.* at 6-9.   Furthermore, the Commissioner asserts that the ALJ declined to give full weight to Dr. Stone's opinion because Dr. Stone reviewed evidence of record until November 2011 and other medical records support a less restrict RFC than one opined by Dr. Stone.   *Id.* at 7; Tr. 19.

The RFC is the most that a claimant can do despite her limitations.   *See* 20 C.F.R. § 404.1545(a).   At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC.   *See* 20 C.F.R. § 404.1546(c).   The ALJ is required to assess a claimant's RFC based on all of the relevant evidence in the record, including any medical history, daily activities, lay evidence and medical source statements.   20 C.F.R. § 404.1545(a).   In determining the claimant's RFC, the ALJ considers not only the claimant's age, education, work experience, and whether she can return to her past relevant work, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)(citing 20 C.F.R. § 404.1520(f)), but also all relevant evidence of the claimant's ability to do work despite her impairments.   *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004); *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).   That means that the ALJ "must consider all allegations of physical and mental limitations or restrictions," not just those determined to be severe.   20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p; *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).   The ALJ is also required to consider the combined effects of the alleged impairments and make specific, well-articulated findings as to the effect of the impairments and whether they result in disability.   *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

Under the regulations, the ALJ must weigh any medical opinion based on the treating relationship with the claimant, the length of the treatment relationship, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source and other factors. *See* 20 C.F.R. § 404.1527(c)(2)-(6). When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

The Court finds that the ALJ properly assigned some weight to Dr. Stone's opinion because Dr. Stone's opinion is inconsistent with the record as a whole and is not well supported by other medical records. Tr. 19; *see Crawford*, 363 F.3d at 1159-60. Plaintiff's medical records start on February 23, 2004 when she visited Michigan Allergy & Asthma Specialists, PC due to her asthma. Tr. 424, 428. She reported that she had one episode of asthma at age of sixteen and was fine until the fall of 2001 when she had a sudden flare up. *Id.* Plaintiff noted during this visit that because of the flare up, she went to the emergency room, but was discharged because

she felt better.   *Id.*   The notes show that Plaintiff had another flare up in June 2003 for which she went to the emergency room and received a nebulizer treatment.   *Id.* Plaintiff reported that she was fine again until January 2004 when she was admitted to hospital for two days.   *Id.*   She also noted that she went to the emergency room on February 21, 2004.   Tr. 425.

During this visit, Plaintiff complained of having respiratory problems such as coughing and wheezing, and a spirometric test revealed that Plaintiff's lung age is 98 years with mild restrictions.   Tr. 423-24.   The examination during this visit showed, however, that Plaintiff had no musculoskeletal issues.   Tr. 425.   The doctor from this visit prescribed a number of medications to Plaintiff, but Plaintiff admitted that she smokes and poorly complies with medication.   Tr. 427.   The doctor emphasized that bronchial asthma could be fatal, and Plaintiff must comply with medication.   Tr. 427.   The doctor also wrote that Plaintiff "must quit smoking."   *Id.* In assessing Plaintiff's RFC, the ALJ discussed and considered the records from this visit.   Tr. 16-17.

Plaintiff made two visits to the emergency department in the year 2007.   On April 28, 2007, Plaintiff went to the emergency room due to her lower back pain.   Tr. 282.   She reported that she felt a "pop" in her mid-back when she was going to lift something, and the pain became worse.   *Id.*   Plaintiff, however, stated that she has had no paresthesia or lower extremity weakness.   *Id.*   On April 29, 2007, Jeffrey R. Sonn, M.D., examined Plaintiff's thoracic spine and opined that Plaintiff's intervertebral body heights appear well maintained, although Plaintiff has multilevel

degenerative disc change with spondylosis.   Tr. 281.   Otherwise, Plaintiff's respiratory system was normal: she had no chest pain, shortness of breath, or cough. Tr. 282.   Plaintiff's lungs were clear without crackles, wheezes, or rhonchi.   *Id.* Her chest x-ray was normal.   Tr. 283.   Plaintiff's musculoskeletal examination also was normal as it revealed normal muscle strength and no signs of acute illness.   *Id.* Christopher A. Ham, M.D., who examined Plaintiff during this visit, recorded, "[e]xcept as noted in the review of systems or history of present illness[,] all other review of systems is negative."   Tr. 282.   Although the ALJ did not explicitly discuss the medical records from this visit, the records support the ALJ's RFC finding.   Tr. 17.

On September 4, 2007, Plaintiff returned to the emergency room because of her asthma exacerbation.   Tr. 274.   Plaintiff complained of shortness breath and coughing.   Tr. 276.   Plaintiff also reported that she had a fainting spell while coughing that morning.   Tr. 276.   Plaintiff noted that she experienced increased wheezing with her decreased use of an albuterol inhaler.   Tr. 274.   Plaintiff also noted that she has had increased difficulty breathing, which caused her to go to Cape Coral Hospital the previous night.   Tr. 275.   Plaintiff stated, however, that she felt better the previous night after receiving IV steroids and breathing medication at Cape Coral Hospital.   *Id.*   Plaintiff was discharged, but returned to the emergency room because of "failure to respond to therapy."   Tr. 277.

Daniel P. Kennedy, M.D., who examined Plaintiff, recorded that Plaintiff was coughing then and reportedly had a syncopal episode lasting several seconds.   Tr.

276.   Dr. Kennedy also noted that this had happened in the past with coughing.   *Id.* Plaintiff's physical examination revealed that her lungs had diffuse inspiratory and expiratory wheezes throughout all lung fields.   *Id.*   Dr. Kenney diagnosed Plaintiff with acute dyspnea, syncope, and asthma exacerbation.   Tr. 277.

Despite her complaints of respiratory issues, however, Plaintiff continued to smoke about one and a half to two packs of cigarettes per day and even was smoking during the morning of this visit.   Tr. 274, 276.   Plaintiff's chest x-ray also was normal, which showed clear lung fields with no cardiac or pulmonary abnormalities. Tr. 276-77.   Although Plaintiff complained of shortness of breath and cough, she also reported having no shortness of breath during the same visit.   Tr. 274, 276.   The ALJ considered and discussed the records from this visit in assessing Plaintiff's RFC. Tr. 17.

On May 11, 2011, Plaintiff saw Alphonsus Zohlandt, M.D., for asthma.   Tr. 300.   Plaintiff stated to Dr. Zohlandt that she has been out of medication for three months.   *Id.*   Dr. Zohlandt noted that Plaintiff smokes one pack of cigarettes per day and diagnosed her with nicotine dependence, mild persistent asthma, chronic obstructive pulmonary, hepatitis C, obesity, and acute sinusitis.   *Id.*   Nonetheless, Plaintiff's physical examination during this visit was normal: Plaintiff's respiratory excursion was not diminished, her lungs were clear to auscultation, and her musculoskeletal system was normal.   Tr. 300-301.   Although the ALJ did not explicitly discuss this opinion, the records from this visit support the ALJ's RFC finding.   Tr. 15.

On July 4, 2011, Plaintiff visited Gulf Coast Medical Center due to her right-sided flank pain radiating into the upper leg.   Tr. 290.   Plaintiff had a lumbar spine x-ray that showed mild diffuse degenerative changes of the lumbar spine with minimal retrolisthesis of L4 on L5, straightening, and a prominent osteophyte along the anterior aspect superior end place of L3.   *Id.*   The x-ray also revealed disproportionate degenerative joint disease along the inferior aspect of the right sacroiliac joint where a prominent osteophyte was seen.   *Id.*   Dwight Stephen Phelps, M.D., diagnosed Plaintiff with right sided sciatica and degenerative joint diseases of pelvis and lumbar spine.   Tr. 288.   Plaintiff, however, reported that her pain suddenly was resolved while she was in triage.   Tr. 289.   In assessing Plaintiff's RFC, the ALJ considered and discussed the medical records from this visit. Tr. 18.

On September 27, 2011, Dr. Zohlandt examined Plaintiff again.   Tr. 349.   He noted that Plaintiff had a disc x-ray during her previous visit to the emergency room and was given 10 mg Percocet.[5]   *Id.*   Dr. Zohlandt diagnosed Plaintiff with acute sinusitis, mild persistent asthma, chronic obstructive pulmonary disease, hepatitis C, obesity, and nicotine dependence.   Tr. 351.   Nonetheless, he noted that the review of system was negative, and Plaintiff still smokes one to one and a half pack of cigarettes per day.   Tr. 349.   Plaintiff's physical examination during this visit also was normal: Plaintiff's respiratory excursion was not diminished, Plaintiff's

---

[5] Percocet is an opioid pain medication used to relieve moderate to severe pain. Drugs.com, http://www.drugs.com/percocet.html (last visited Feb. 9, 2017).

lungs were clear to auscultation, and her musculoskeletal system was normal.   Tr. 350.   Based on his examination, Dr. Zohlandt maintained his diagnoses of her from the previous visit on May 11, 2011 and recommended Plaintiff to exercise regularly, lose weight, return to the clinic or go to the emergency if conditions worsen, and abstain from smoking.   Tr. 301, 352.

On October 12, 2011, Plaintiff saw Dr. Zohlandt for the third time.   Tr. 346. Dr. Zohlandt noted that Plaintiff has a spur close to her sciatic nerve, which was not seen before.   *Id.*   Dr. Zohlandt recorded that Plaintiff's x-ray showed degenerative joint disease, but Plaintiff never had a MRI or tried treatment for hepatitis C.   *Id.* Plaintiff, however, reported having a bad pain attack only once and not having it again since.   *Id.*   Dr. Zohlandt recommended Plaintiff to see a pain specialist, and Plaintiff expressed her desire to see a pain specialist and gastroenterologist as well. *Id.*   As a result, Dr. Zohlandt referred Plaintiff to gastroenterology and a MRI.   Tr. 348.   During this visit, the review of Plaintiff's system still was negative, and Plaintiff continued to smoke one pack of cigarettes per day.   *Id.*   Plaintiff's physical examination during this visit did not show any abnormalities in her lungs or musculoskeletal system.   Tr. 347.   Dr. Zohlandt's recommendations to Plaintiff did not change from the previous visit.   Tr. 348.

On October 21, 2011, Plaintiff's MRI revealed that although Plaintiff has a Schmorl's node formation at the superior end plate of L3, her vertebra otherwise has normal alignment and marrow signal without fracture or spondylolisthesis.   Tr. 345. David H. Turkel, M.D., who analyzed Plaintiff's MRI, opined that Plaintiff has L5-S1

disc degeneration with mild central left-sided disc protrusion, and minor degenerative changes/bulging of the L2-3 and L3-4 discs of "doubtful" clinical significance then.   *Id.*   Although the ALJ did not discuss Plaintiff's visits to Dr. Zohlandt on May 11, 2011 and September 27, 2011, he considered and noted Dr. Zohlandt's notes from October 12, 2011 and the October 2011 MRI in assessing Plaintiff's RFC.   Tr. 18-19.

During the years 2011 and 2012, Plaintiff regularly sought medical attention. Tr. 300-73.   Including the visits noted, Plaintiff's physical examinations during this time period consistently showed no abnormalities with her respiratory or musculoskeletal systems on May 11, 2011, September 27, 2011, October 12, 2011, October 17, 2011,[6] October 27, 2011,[7] November 3, 2011,[8] November 16, 2011, December 1, 2011,[9] March 20, 2012,[10] September 20, 2012,[11] and September 13,

---

[6] Plaintiff's back was nontender without any swelling, and she had no shortness of breath or cough.   Her lung also was clear to auscultation although diminished.   Tr. 305-06.

[7] Plaintiff had no shortness of breath and cough, and her lung was clear to auscultation.   Tr. 320-21.   Her musculoskeletal system was normal, and she had no localized joint swelling and no localized joint stiffness.   *Id.*   Plaintiff's back also had no costovertebral angle tenderness.   Tr. 321.

[8] Plaintiff had no dyspnea and cough, and her back was normal.   Tr. 340-41. Plaintiff's respiratory excursion was not diminished, and her lung was clear to auscultation. Tr. 340.

[9] Plaintiff had no shortness of breath, chronic cough, or localized joint swelling or stiffness.   Tr. 312.   Her lung was clear to auscultation.   *Id.*

[10] Plaintiff had no pulmonary symptoms, and her lung was clear to auscultation.   Tr. 330-31.   Plaintiff's back had no costovertebral angle tenderness, and her musculoskeletal system was normal.   Tr. 331.   Plaintiff also reported that she is not enrolled in smoking cessation classes.   Tr. 329.

[11] Plaintiff had no pulmonary symptoms, and her lung was clear to auscultation.   Tr. 325-26.   Plaintiff's respiratory excursion was not diminished.   Tr. 326.   Plaintiff's back had no costovertebral angle tenderness.   *Id.*

2013.   Tr. 301, 305-06, 312, 320-21, 325-26, 330-31, 336, 340-41, 347, 350, 360-61;
Doc. 28 at 8-9.

Plaintiff's medical records during the years 2012 and 2013 also do not support that Plaintiff could only perform light work.   Tr. 87.   After Dr. Stone examined Plaintiff on November 28, 2011, Plaintiff visited Gulf Coast Medical Center on May 4 and 31, 2012.   Tr. 410-17.   On May 4, 2012, Plaintiff sought medical attention due to her cough, facial pressure, congestion, and runny nose.   Tr. 410.   Plaintiff complained of having a cough productive of thick brown mucous for two weeks.   Tr. 410.   Plaintiff, however, admitted that she smokes one and a half packs of cigarettes per day, and her cough has improved markedly over the past few days.   *Id.*   She also stated that although her symptoms are constant and moderate to severe, they are improving without specifying what is causing the improvement.   *Id.*   Walter Ray Simmons, D.O., who examined Plaintiff, diagnosed Plaintiff with asthmatic bronchitis and sinusitis.   Tr. 411.

Dr. Simmons, however, noted that Plaintiff's neck was supple and nontender, her back was nontender without any swelling, and her bilateral lung field wheezed occasionally but had good air flow and no restrictions or respiratory distress.   Tr. 410-411.   Plaintiff's extremities showed no clubbing, cyanosis, or tenderness.   Tr. 411.   Plaintiff's chest x-ray also was clear.   *Id.*   Dr. Simmons offered a nebulizer treatment, which Plaintiff declined.   *Id.*   Plaintiff was given a prescription of

Zithromax,[12] Medrol Dosepak,[13] and Albuterol inhaler.[14]   *Id.*   The ALJ considered and discussed this visit in assessing Plaintiff's RFC.   Tr. 17.

On May 31, 2012, Plaintiff visited the emergency department of Gulf Coast Medical Center because moving heavy boxes caused her back pain.   Tr. 414.   She complained of the increasing chronic, predominately right lower back pain radiating through the gluteus down to the right leg, but denied any sign of weakness.   *Id.* Plaintiff stated that she was diagnosed with a bone spur in 2011 and had daily chronic pain since then.   *Id.*   She also reported occasionally having numbness in her right toes, which she did not have during this visit.   *Id.*   Thomas Lee Schaar, M.D., who examined Plaintiff, diagnosed her with acute exacerbation of chronic lower back pain with radiculopathy down the leg.   Tr. 416.

On the other hand, Plaintiff admitted that she has a prescription for Percocet, but tries her best not to take it and had not taken it at least over one week.   Tr. 414. Despite her reluctance to take the medication, Plaintiff stated that she took one Percocet one and a half hours before going to the hospital, which reduced her pain down from eight to four on a scale of ten.   *Id.*   Plaintiff reported that her lower back pain improved significantly with her pain management treatment and Percocet, and

---

[12]   Zithromax   is   an   antibiotic   that   fights   bacteria.   Drugs.com, https://www.drugs.com/zithromax.html (last visited Feb. 10, 2017).

[13]   Medrol Dosepak is a steroid that prevents the release of inflammatory substances in the body.   Drugs.com, https://www.drugs.com/mtm/medrol-dosepak.html (last visited Feb. 10, 2017).

[14]   Albuterol inhalation is a bronchodilator that relaxes muscles in the airways and increases air flow to the lungs.   Drugs.com, https://www.drugs.com/albuterol.html (last visited Feb. 10, 2017).

she has been pleased with Percocet.   Tr. 416.   As a result, during this visit, Plaintiff declined treatment and only sought educational information on how she could help her back without resorting to any medications.   Tr. 414, 416.

Furthermore, Plaintiff during this visit did not have any cough, hemoptysis, wheezing, shortness of breath, or dyspnea.   Tr. 415.   She also had no other musculoskeletal issues and denied any cramping pain, stiffness, joints or redness. *Id.*   Her chest had a symmetrical rise and fall with good tidal volume heard without any wheezes, rales, or rhonchi.   *Id.*   The examination of her musculoskeletal system was otherwise normal because she had a full range of motion with 5/5 muscular strength and intact appropriate bilateral great toes and plantar dorsiflexion, and was negative for Homans sign.[15]   Tr. 416.   She also showed no other joint muscle erythema, edema or tenderness.   *Id.*   The ALJ discussed and noted this visit in assessing Plaintiff's RFC.   Tr. 18.

On September 5, 2012, Plaintiff again returned to the emergency department due to sore throat and laryngitis.   Tr. 420.   Plaintiff stated that she had intermittent fever, dough, sore throat, and laryngitis for three weeks, but denied any chest pain or shortness of breath.   *Id.*   Plaintiff reported having a cough that produces white phlegm.   *Id.*   During this visit, Plaintiff's chest x-ray showed possibly an early right basilar infiltrate.   Tr. 421.   Dr. Schaar who examined Plaintiff, however, noted that Plaintiff continues to smoke.   Tr. 420.   Plaintiff's

---

[15] Homans sign is discomfort behind the knees on forced dorsiflexion of the foot.   The Free Dictionary by Farlex, http://medical-dictionary.thefreedictionary.com/Homan+sign (last visited Feb. 9, 2017).

lungs also were clear to auscultation bilaterally, although they had a minimal amount of rhonchi at the right base.   *Id.*   Her chest movement was symmetric, and her respirations were non-labored.   *Id.*   Plaintiff appeared alert, appropriate, and in no distress.   *Id.*   After diagnosing Plaintiff with right lower lobe pneumonia, acute pharyngitis, laryngitis, tobacco abuse, and chronic obstructive pulmonary disease, Dr. Schaar gave some antibiotics to Plaintiff and counseled her regarding her need to cease smoking.   Tr. 421.   The ALJ fully considered this opinion in assessing Plaintiff's RFC.   Tr. 17.

After this visit, Plaintiff followed up with Ronald Ramirez, M.D., on September 20, 2012.   Tr. 324.   Plaintiff reported that she has lived in a house with "Chinese dry wall" for three years and also is an everyday smoker.   *Id.*   During this visit, she denied having any fever, chills, headaches, or chest pain.   *Id.*   Her physical examination from this visit did not reveal any abnormalities with her lungs or back. Tr. 326.   Although the ALJ did not explicitly discuss this opinion, the records from this visit support the ALJ's RFC finding.   Tr. 17-19.

On January 18, 2013, Plaintiff visited Dr. Ramirez because she had a cough with phlegm and chest congestion for five or six days.   Tr. 363.   Her pulmonary auscultation revealed abnormalities along with mild chest congestion with mild wheezing.   Tr. 364.   Dr. Ramirez diagnosed Plaintiff with chronic bronchitis with acute exacerbation and morbid obesity.   *Id.*   Otherwise, she denied having any chest pain, shortness of breath, back pain, fever, or chills.   Tr. 363.   Plaintiff's back and musculoskeletal system were normal.   Tr. 364.   Plaintiff also reported that she

still is an everyday smoker.   Tr. 363.   Dr. Ramirez provided education and counseling on the proper use of medications and the importance of taking the medications strictly as directed.   Tr. 365.   The ALJ considered and discussed this opinion in assessing Plaintiff's RFC.   Tr. 17.

On August 17, 2013, Plaintiff visited Lehigh Regional Medical Center due to cough and breathing difficulties.   Tr. 370.   Plaintiff reported, however, that at their worst, these symptoms were moderate, although they are alleviated by nothing and aggravated by exertion.   *Id.*   Plaintiff also stated that she had similar episodes chronically in the past and has been to the emergency room one month ago, where she was diagnosed with pneumonia.   *Id.*   Plaintiff reportedly believed that she has pneumonia again.   *Id.*   The physical examination revealed that she had a cough with yellow sputum, shortness of breath, and wheezing.   Tr. 371.   Mary Sullivan, D.O., who examined Plaintiff, opined that Plaintiff had mild respiratory distress, moderate shallow respirations, moderate tachypnea, mild and scattered rhonchi, and moderate wheezing that was heard diffusely.   Tr. 372.

Plaintiff, however, continued to smoke one pack of cigarettes per day.   Tr. 370.   Plaintiff also denied having any fever or flu like symptoms including headaches and appeared awake, alert, and oriented to person, place, time and situation.   Tr. 370-71.   Plaintiff had a normal back with a full range of motion and motor strength 5/5 and a normal range of motion in all extremities.   Tr. 371.   At the end of this visit, Dr. Sullivan noted that Plaintiff's symptoms markedly improved after treatments,

and discharged her with antibiotics, Zithromax.   Tr. 372.   The ALJ noted this opinion in evaluating Plaintiff's RFC.   Tr. 18.

On September 13, 2013, Plaintiff followed up with Dr. Ramirez after being to the hospital for a COPD[16] exacerbation.   Tr. 358.   Dr. Ramirez noted, Plaintiff "has been noncompliant" and has been "not taking medications as prescribed" as well as "not taking medications this morning".   *Id.*   Dr. Ramirez recorded that Plaintiff was in a stable condition and in no acute distress, and Plaintiff denied any chest pain, shortness of breath, or back pain.   *Id.*   He also indicated that her musculoskeletal system was normal, and her lungs were clear to auscultation.   Tr. 360-61.   Based on his examination, Dr. Ramirez diagnosed Plaintiff with chronic obstructive pulmonary disease and nicotine related disorders.   Tr. 361.   He prescribed Advair Diskus,[17] Ventolin HFA,[18] and Ipratropium,[19] and recommended Plaintiff to begin regular exercise and a low salt diet.   Tr. 362.   In addition, Dr. Ramirez warned her of morbidity and mortality that could follow if she does not take medications as directed.   Tr. 362.   The ALJ discussed this visit in evaluating Plaintiff' RFC.   Tr.

---

[16] COPD stands for Chronic Obstructive Pulmonary Disease, an umbrella term for progressive lung diseases.   COPD Foundation, http://www.copdfoundation.org/What-is-COPD/Understanding-COPD/What-is-COPD.aspx (last visited Feb. 9, 2017).

[17] Advair contains a steroid that prevents the release of inflammatory substances in the body and a bronchodilator.   Drugs.com, https://www.drugs.com/advair.html (last visited Feb. 10, 2017).

[18] Ventolin   HFA   is   albuterol   inhalation.   Drugs.com, https://www.drugs.com/mtm/ventolin-hfa.html (last visited Feb. 10, 2017).

[19] Ipratropium is a bronchodilator that relaxes muscles in the airway and increases air flow to the lungs.   Drugs.com, https://www.drugs.com/mtm/ipratropium-inhalation.html (last visited Feb. 10, 2017).

18.   As noted by the ALJ, no further treatments records regarding Plaintiff's asthma after this visit exist.   *Id.*

On December 6, 2013, Plaintiff saw Vellmir A. Micovic, M.D., for her mid and lower back pain with radicular pain to both legs.   Tr. 398.   Plaintiff reported having pain of level seven and associated tingling in lower and mid-back, tail bone, head, neck, shoulder, and bilateral arms, joints, and legs.   *Id.*   She stated that her pain is aching, constant, shooting, and throbbing, and radiates into the spine, hips, and both legs.   *Id.*   Plaintiff noted that although her pain interrupts her sleep and affects daily activities, her pain medication alleviates her pain and does not give her side effects.   *Id.*   In fact, Plaintiff's physical examination showed that Plaintiff was positive for myalgias, back pain, and arthralgias.   Tr. 399.   Dr. Micovic also noted that Plaintiff's right shoulder and lumbar back exhibited a decreased range of motion, tenderness, pain, and spasm.   *Id.*

Her cervical and thoracic back, however, was normal.   *Id.*   Dr. Micovic also indicated that Plaintiff's neck had a normal range of motion and was supple.   *Id.*   Plaintiff had no cyanosis, clubbing, or edema, and her writs, shoulders, hips, knees, and bilateral ankles had a full range of motion.   Tr. 400.   Her muscle tones were normal, and Plaintiff had normal gait and 5/5 motor strength.   *Id.*   In addition, Plaintiff's chest was normal, and she had normal breathing sound and no respiratory distress.   Tr. 399.   Plaintiff was positive for cough, but negative for shortness of breath.   *Id.*   Plaintiff also was oriented to person, place, and time, and appeared well-developed, well-nourished, and in no distress.   *Id.*   Based on his examination,

Dr. Micovic opined that Plaintiff is stable on the current analgesic regimen without any significant side effects, and "is able to function well on the current regimen."    Tr. 401.    At the end, he diagnosed Plaintiff with pain in back and prescribed hydrocodone[20]-acetaminophen and citalopram.[21]    Tr. 401.    The ALJ considered and discussed this visit in evaluating Plaintiff's RFC.    Tr. 19.

Based on the review of the record and the ALJ's decision, the Court finds that the ALJ properly discussed Plaintiff's alleged impairments "as a whole," and assigned only some weight to Dr. Stone's opinion because as the ALJ noted, Plaintiff's medical records as a whole support a less restrictive RFC.    Tr. 16-19; *Crawford*, 363 F.3d at 1159-60; *see Hunter*, 609 F. App'x at 558.    The Court finds that Dr. Stone's opinion is inconsistent with the record as a whole, and other records contrast Dr. Stone's opinion.

Although Plaintiff complained of chronic back pain and respiratory issues, her back pain and respiratory problems were not continuous or consistent.    For example, Plaintiff complained of having cough and breathing difficulty and was found to have mild respiratory distress on August 17, 2013.    Tr. 370, 372.    One month later, on September 13, 2013, Plaintiff was in a stable condition and no acute distress and denied having any shortness of breath, back pain, or chest pain.    Tr. 358.    Neither did Plaintiff exhibit any respiratory distress on December 6, 2013.    Tr. 399.

---

[20]    Hydrocodone is an opioid pain medication.    Drugs.com, https://www.drugs.com/hydrocodone.html (last visited Feb. 9, 2017).

[21]    Citalopram is an antidepressant.    Drugs.com, https://www.drugs.com/citalopram.html (last visited Feb. 9, 2017).

In fact, although Plaintiff complained of back pain or respiratory problems, a number of Plaintiff's physical examinations showed little or no abnormalities with her back and lungs.   Tr. 301, 305-06, 312, 320-21, 325-26, 330-31, 336, 340-41, 347, 350, 360-61, 398-401, 410-411, 415-16, 420.   Plaintiff also admitted that receiving treatments and taking medications significantly improved her conditions.   Tr. 275, 372, 398, 416.   As a result, on December 6, 2013, Dr. Micovic explicitly opined that Plaintiff is in a stable condition with her current medications and "is able to function well on the current regimen."   Tr. 401.

Even if the ALJ committed an error by not discussing some of Plaintiff's medical records in evaluating Plaintiff's RFC and identifying what daily activities in assigning some weight to Dr. Stone's opinion, this error was harmless because "it did not affect the judge's ultimate decision."   *Hunter*, 609 F. App'x at 557.   The court has no rigid requirement "that the [ALJ] specifically refer to every piece of evidence in his or her decision, so long as the decision is not a broad rejection that leaves the district court [] with insufficient information to conclude whether the [ALJ] considered the claimant's medical condition as a whole."   *Id.* (internal quotation marks omitted).

With regard to Plaintiff's impairments of headache, insomnia, and left shoulder pain that the ALJ did not consider, Plaintiff "has the burden to present evidence of her impairments and their severity."   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).   The Eleventh Circuit has held that "[a]lthough the ALJ must consider all the impairments the claimant alleges in determining whether the

claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant" *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006) (internal citations omitted); *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014).

Here, Plaintiff has presented no legal authority that requires an ALJ to consider every single symptom alleged by a claimant when Plaintiff's alleged impairments did not include headache, insomnia, and left shoulder pain on her paperwork and during the hearing before the ALJ.[22]   Tr. 43, 65, 83.   In fact, according to Plaintiff's paperwork, migraine headaches are symptoms of Plaintiff's asthma, and insomnia is her medication's side effect.   Tr. 206-07.

Furthermore, Plaintiff's medical records clearly show that Plaintiff has had left shoulder pain for many years, and yet did not allege it as her disability.   On October 17, 2011, Plaintiff visited the emergency room at Gulf Coast Medical Center due to her left shoulder pain, and Dr. Simmons, examined her.   Tr. 305.   Dr. Simmons noted in the history of present illnesses that Plaintiff had this pain for many years, and her primary doctor diagnosed Plaintiff with bursitis in the past.   *Id.* Plaintiff rated her left shoulder pain as eight on a scale of ten, which reportedly got worse with movement or touch.   *Id.*   Plaintiff, however, admitted that she had not had a "workup for this."   *Id.*   Plaintiff also reported that although she has Percocet

---

[22] During the hearing, Plaintiff testified that her back, breathing, and mental state stop her from being able to work.   Tr. 43.

at home, she has not been taking it.   *Id.*   Plaintiff's physical examination revealed that although she had tenderness and pain in her left shoulder, she had a full range of motion and no clubbing or cyanosis.   Tr. 306.   Plaintiff also had good sensation in her left hand.   *Id.*   Dr. Simmons discharged her after diagnosing her with chronic left shoulder pain with rheumatoid arthritis.   *Id.*   He noted that Plaintiff with a sling is in a "good and stable condition" and recommended Plaintiff to follow up within one day.   Tr. 306-07.

On November 3, 2011, Plaintiff also saw Marcia K. Gilkes, ARNP, due to her left shoulder pain and chronic back pain.   Tr. 339.   During this visit, Plaintiff's musculoskeletal system was normal, and she had no localized joint pain.   Tr. 340-41.   Ms. Gilkes referred Plaintiff to an orthopedist and prescribed Cortisporin[23] 3.5-1000-1 solution and Amoxicillin[24] 500 mg caps.   Tr. 342.   Otherwise, she made the same recommendation as Dr. Zohlandt, including exercising regularly, losing weight, and abstaining from smoking.   *Id.*   The records show that both Dr. Simmons and Ms. Gilkes, who examined Plaintiff for her left shoulder pain, did not opine any functional limitations on Plaintiff's ability to perform basic activities.   Tr. 306, 342.

Lastly, the ALJ considered the records from December 6, 2013 when Plaintiff complained of pain in both shoulders.   Tr. 19.   During this visit, Dr. Micovic did not note any specific problem with her left shoulder.   Tr. 398-401.   Dr. Micovic found

---

[23] Cortisporin is a sterile antibacterial and anti-inflammatory solution for otic use. Drugs.com, https://www.drugs.com/pro/cortisporin-otic-suspension.html (last visited Feb. 9, 2017).

[24] Amoxicillin is a penicillin antibiotic that fights bacteria. Drugs.com, https://www.drugs.com/amoxicillin.html (last visited Feb. 9, 2017).

that her left shoulder tone was normal and the shoulder had a full range of motion and full muscular strength.   Tr. 400.   Although the ALJ did not explicitly mention Plaintiff's left shoulder pain in his decision, the ALJ's discussion of these medical notes from December 6, 2013 implies his consideration of Plaintiff's left shoulder pain.   Tr. 19.   Based on the reasons above, the Court finds that the ALJ did not err in failing to specifically discuss Plaintiff's headache, insomnia, and left shoulder pain. *Atha*, 616 F. App'x at 933; *Jones*, 190 F.3d at 1228; *East*, 197 F. App'x at 902.

### b.   Whether the ALJ probably did not consider Plaintiff's obesity

Plaintiff argues that although her medical records show her diagnosis of morbid obesity, the ALJ did not determine whether her obesity significantly limited her ability to perform basic work activities.   Doc. 25 at 17.   The Commissioner responds that Plaintiff did not allege obesity as her impairment or prove her weight was a severe impairment.   Doc. 28 at 10-14.   The Commissioner asserts that Plaintiff's treatment notes do not show Plaintiff's obesity caused work-related functional limitations or significantly limited her daily activities.   *Id.* at 12-13.   The Commissioner claims at most Plaintiff was advised to lose weight and watch her diet. *Id.* at 12.   Even then, the Commissioner argues that Plaintiff did not follow these recommendations.   *Id.*

As noted, contrary to Plaintiff's assertion that the ALJ has a burden to determine whether Plaintiff's obesity affects her ability to perform basic work activities, it is Plaintiff's burden to establish that her obesity affected her ability to perform basic work activities.   *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir.

2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work.").

Here, Plaintiff did not meet her burden.   First, the ALJ did not need to consider Plaintiff's obesity because Plaintiff did not identify obesity as an impairment on her paperwork and during the hearing.   Tr. 36-37, 43, 206-9; *see East*, 197 F. App'x at 902 ("Although the ALJ must consider all the impairments the claimant alleges in determining whether the claimant is disabled, the ALJ need not scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant."). Plaintiff admits that she did not assert obesity as a disabling impairment on her initial paperwork.   Doc. 31 at 4.   During the hearing, Plaintiff did not establish or discuss at all how obesity impaired her functioning.   Tr. 36-37.   Instead, Plaintiff testified that she had lost over twenty pounds, which helped her back and gave her more energy, because her doctor "told [her] that it could help [her] breathing and [her] back."   Tr. 36-37.   This testimony contradicts Plaintiff's expressed belief that she explained during the hearing, "the excessive weight caused [] her respiratory and lumbar problems."   Doc. 31 at 4.

Because Plaintiff does not allege obesity as her impairment or clearly establish how her obesity affects her ability to perform work, this case is distinguishable from *Andrades v. Astrue*, which Plaintiff argues is similar to this case.   No. 2:09-cv-580-FtM-DNF, 2010 WL 4823838, at *8 (M.D. Fla., Nov. 12, 2010); Doc. 31 at 5.   In

*Andrades*, the court found that the ALJ erred by not considering the plaintiff's obesity because the plaintiff was diagnosed with "exogenous obesity," and had a BMI in excess of forty, which is "clinically considered the most severe level of obesity." 2010 WL 4823838, at *8. Plaintiff here not only was not diagnosed with "exogenous obesity," but also testified that she has lost over twenty pounds, which helped her back problems. *See id.;* Tr. 36-37. As a result, similar to *Mathis v. Colvin*, Plaintiff neither alleged obesity as a cause of her disability nor testified at the hearing that obesity impairs her functioning. No. 8:12-CIV-2072-T-EAK-EAJ, 2013 WL 6498453, at *4-5 (M.D. Fla. Dec. 11, 2013); Doc. 31 at 4-5.

### c. *Whether the ALJ properly applied the correct legal standards in assessing Plaintiff's tobacco use*

The ALJ found that Plaintiff's allegations of impairments:

> are not fully credible to the extent that all work. [Plaintiff] made relatively infrequent trips to the doctor for her back pain, and resisted narcotic pain medication even though she stated, and the doctor noted, had improved her significantly. . . . Moreover, [Plaintiff] has been instructed for over a decade form her treatment providers to cease smoking which, if [Plaintiff] did, would no doubt improve her condition significantly.

Tr. 19.

Here, Plaintiff admits that she is a cigarette smoker. Doc. 25 at 19. Plaintiff, however, claims that the ALJ erred for not citing to any evidence supporting his conclusion that Plaintiff's cessation of smoking would help improve Plaintiff's condition. *Id.* Plaintiff argues that the ALJ's assessment of Plaintiff's smoking habit does not comply with SSR 82-59, which provides a criteria for evaluating failure to follow prescribed treatment. Docs. 25 at 19, 31 at 6-7. According to Plaintiff,

SSR 82-59 requires (1) a prescribed treatment to be documented by a treating source and (2) the treatment to be clearly expected to restore capacity to engage in any gainful activity.   Doc. 25 at 19; SSR 82-59.   Plaintiff asserts that the doctors' recommendation to cease from smoking was counseling and an expression of their concerns, not a prescribed treatment under SSR 82-59.   Doc. 25 at 19-21.

The Commissioner argues that the ALJ considered Plaintiff's medical records and poor compliance with medications in addition to her failure to cease smoking. Doc. 28 at 15.   Furthermore, the Commissioner asserts that Plaintiff's smoking habit undermines Plaintiff's credibility.   *Id.* at 16.   In addition, the Commissioner argues that SSR 82-59 does not apply to this case because the ALJ did not base his decision on Plaintiff's failure to follow treatment.   *Id.*

As noted by the Commissioner, the Court finds that Plaintiff's reliance on SSR 82-59 is misplaced.   "[T]he procedures mandated in SSR 82-59 only apply to claimants who would otherwise . . . be found to be under a disability, but who fail without justifiable cause to follow treatment prescribed by a treating source."   *Mack v. Comm'r of Soc. Sec.*, 420 F. App'x 881, 883 (11th Cir. 2011) (internal quotation marks omitted); SSR 82-59.   Under this circumstance, "the Commissioner can deny benefits on the basis that the claimant has failed to follow prescribed treatment." *Mack v. Comm'r of Soc. Sec.*, 420 F. App'x at 883.   Accordingly, the court does not examine whether the ALJ complied with SSR 82-59 if the ALJ's determination that the claimant is not disabled is not significantly based on the claimant's noncompliance with prescribed treatment.   *See id.*

Here, the ALJ denied benefits to Plaintiff based on Plaintiff's medical records, such as opinions from treating or examining physicians, not based on Plaintiff's failure to follow treatment.   Tr. 19-20.   Instead, the ALJ used Plaintiff's failure to cease smoking in assessing Plaintiff's subjective allegations of pain and impairments. Tr. 19.   As a result, Plaintiff's argument that the ALJ did not follow SSR 82-59 is not persuasive here.   *See Mack*, 420 F. App'x at 883.

When assessing the credibility of subjective complaints, an ALJ considers: (1) evidence of an underlying medical condition; and (2) objective medical evidence either (a) confirming the severity of alleged symptoms, or (b) indicating that the medical condition could be reasonably expected to cause symptoms as severe as alleged.   *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The Eleventh Circuit has long recognized that "credibility determinations are the province of the ALJ."   *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005), citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work.   *See* 20 C.F.R. §§ 404.1529(c)(1); *Wilson*, 284 F.3d at 1225-26; *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors

concerning limitations and restrictions the symptoms cause.  *See* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson*, 284 F.3d at 1225 (internal citations omitted).

Here, based on the requirements of 20 C.F.R. § 404.1529, the ALJ considered Plaintiff's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence.  Tr. 16. Properly discussing the standard, Plaintiff's testimony and the medical evidence, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff]s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  *Id.*  After discussing Plaintiff's treatment history, opinion evidence and her daily activities (Tr. 16-19), the ALJ determined that the record does not support the claimant's allegations to the extent that all work is precluded.  Tr. 19.  As a result, the Court finds that substantial evidence supports the ALJ's assessment of Plaintiff's credibility, and the ALJ used the correct legal standards.  Tr. 16; *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

ACCORDINGLY, it is hereby

**ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 10th day of February, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record